UNITED STATES of America, Appellee,

v.

**Arthur Lee BYCER, t/a Bycer's Pharmacy, Appellant.**

No. 78–1869.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1979.

Decided March 9, 1979.

**550**

Jeffrey M. Miller, Nasuti & Miller, Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and WEIS, Circuit Judges and KUNZIG,* Judge, United States Court of Claims.

---

\* Honorable Robert L. Kunzig, United States Court of Claims, Washington, D.C., sitting by designation.

1. 21 U.S.C. § 841(a) provides in pertinent part:
"Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

## OPINION OF THE COURT

WEIS, Circuit Judge. ·

■ Inferences from established facts are accepted methods of proof when no direct evidence is available. It is essential, however, that there be a logical and convincing connection between the facts established and the conclusion inferred. We find that correlation lacking in this case where inferences of illegal drug distribution were drawn from a pharmacist's inability to reconcile his inventory of controlled substances with records of shipments to his store. Since there was no other evidence to establish the prosecution's case on distribution, we vacate those convictions. No error appearing in the determination of guilt in a related charge of a recordkeeping deficiency, the judgment on that count will be affirmed.

Defendant Bycer was charged in seven separate counts with distributing controlled substances over a two-year period, from May 3, 1975 to May 25, 1977, in violation of 21 U.S.C. § 841(a)(1). In addition, one count of the indictment alleged that the defendant, a pharmacist, failed to maintain proper records as required by 21 U.S.C. § 827(a)(3).[1] After three days of deliberation, a jury returned verdicts of guilty on all counts. This appeal was taken from the sentences imposed.

Bycer was the managing pharmacist, before and during the indictment period, for a drug store in Collingdale, Pennsylvania. The government produced evidence showing that the pharmacy's records over the two-year period failed to account for approximately 100,000 tablets of various controlled substances and 400 grams of co-

21 U.S.C. § 827(a)(3) provides:
"Except as provided in subsection (c) of this section—
(3) on and after May 1, 1971, every registrant under this subchapter manufacturing, distributing, or dispensing a controlled substance or substances shall maintain, on a current basis, a complete and accurate record of each such substance manufactured, received, sold, delivered, or otherwise disposed of by him, except that this paragraph shall not require the maintenance of a perpetual inventory."

caine.[2] This discrepancy was established by calculating the quantity of drugs received by the pharmacy and subtracting from that figure both the drugs in the store's inventory and those accounted for by prescriptions. The prosecution made adjustments for drugs and prescriptions reported missing by Bycer as a result of two separate burglaries within the indictment period, one on June 21, 1975, the other on March 15, 1976.

The store employed six pharmacists at various times during the years in question, and each one was given a key to the front door as well as a key to the locked drawer where the narcotics were kept. Bycer's mother, the store's owner, supplied the names of these individuals at the trial but none was called as witnesses. The defendant generally worked five days per week at varying hours; when he was not present, one of the other pharmacists was on duty. Although defendant's signature appeared on all the orders for drugs, he left signed blank forms in the store for use by the other pharmacists. Other persons worked in the store, either in a sales capacity or as stock boys, but they did not have keys to the narcotics drawer.

The government's case contained no direct evidence of a distribution. Indeed, on two occasions the Drug Enforcement Administration sent an undercover agent-informer to the store in an effort to purchase drugs illegally from Bycer, and in both instances the defendant rebuffed the attempts, calling the police on the second occasion. Hence, the government was compelled to rely on inferences to establish that defendant had distributed the drugs illegally, based on the facts of (1) possession; (2) the amount of drugs unaccounted for; (3) the potential for large financial gain given the substantially greater "street value" of the substances; (4) the failure of Bycer to discharge any of the pharmacists for stealing drugs; and (5) defendant's nonaddiction. Bycer challenges the verdict on the ground that these inferences are no substitute for direct evidence of a distribution.

Our function in reviewing a guilty verdict is circumscribed. We do not weigh the evidence or determine the credibility of witnesses, and must sustain the verdict if supported by substantial evidence, taking the view most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The fact that evidence is categorized as circumstantial does not make it less probative. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Convictions under § 841(a)(1) have been sustained, although supported only by circumstantial evidence. *See United States v. Hollman,* 541 F.2d 196 (8th Cir. 1976); *United States v. Malfi,* 264 F.2d 147 (3d Cir.), *cert. denied,* 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959) (conviction under predecessor to § 841).

This case, however, must be viewed from a slightly different perspective. The government's evidence, resting as it does only upon a chain of inferences, requires us to determine whether the proved facts logically support the inference of distribution. That the inference was properly drawn in other circumstances does not obviate our need to examine its justification here.

The government places principal reliance on the quantity of missing drugs formerly in the pharmacy's possession. Specifically, it asserts that because Bycer was the manager of the store and had primary responsibility for the controlled substances, he was in the best position to distribute them. In evaluating the strength of this inference, the Supreme Court's analysis of a statutory presumption in *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), provides us with some guidance. The Court there inquired whether there was a sufficient connection between the proved fact and the one presumed by the statute. The defendant was convicted of two violations of a now-repealed statute which made it unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs and

---

**2.** Bycer's father, the former manager of the pharmacy, suffered from a prolonged illness and died during the indictment period. The evidence indicates that this had an unsettling effect on Bycer, and may have contributed to the gap in the pharmacy's records.

deemed possession to be prima facie evidence of guilt. Revenue Act of 1926, ch. 27, § 703, 44 Stat. 97 (repealed 1970). In the course of its opinion, the Court commented that the bare fact of possession fell far short of sufficient evidence from which inferences of dispensing, distributing, or selling could be derived. *Turner v. United States, supra* at 421, 423, 90 S.Ct. 642 at 654, 655, 24 L.Ed.2d 610.

There have been instances, however, where the possession of drugs in quantities larger than those expected for private use has been used to infer an intent to distribute. *See, e. g. United States v. Giles,* 536 F.2d 136, 141 (6th Cir. 1976); *United States v. Henry,* 468 F.2d 892, 894 (10th Cir. 1972); *United States v. Mather,* 465 F.2d 1035, 1037–38 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972). But in those cases the defendants were not pharmacists or otherwise expected to possess drugs; thus the mere presence of drugs had an aura of suspicion. Here, by contrast, the defendant was legally in possession of the controlled substances and the missing inventory for the pharmacy over a two-year period has not been shown on this record to be highly unusual. *Cf. United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975) (physician); *United States v. Hill,* 589 F.2d 1344 (8th Cir. 1979) (drug salesman).

Moreover, the possession here is of a different character than the kind encountered where defendants are apprehended with large amounts on their persons or under their direct control. Upon delivery to the Bycer Pharmacy, the narcotics were kept in a locked place to which at least six other people had access during the two-year period. We have expressed concern over the non-exclusive possession problem in another context. In *United States v. Bonham,* 477 F.2d 1137 (3d Cir. 1973) (*en banc*), one of two brothers who shared a bedroom containing hidden heroin was convicted of criminal acquisition of the drug. The court reversed, stating that a fact-finder could only speculate whether one or both of the roommates even knew of the cache, much less exercised control over it. The case at bar differs in that, concededly, the defendant did have control over the drugs, but for only part of the time and shared with others. In these circumstances, the possession factor has considerably less weight.

The prosecution also attaches significance to the fact that the defendant did not discharge any of the pharmacists for stealing the drugs. This consideration is a weak one, because only if the defendant knew of thefts would he be expected to take such action, and it has not been shown that if such thefts had occurred they would have been detected. Nor did the prosecution close the gap between possession and distribution by calling the other pharmacists as witnesses.

Our careful review of the record in this case fails to disclose any substantial connection between the proved, non-exclusive possession and the charged distribution. We are all too aware of the seriousness of the illegal drug traffic problem and the difficulty of prosecution in many cases. But we are not willing to abandon the protection designed to aid the innocent—requiring proof beyond a reasonable doubt, not simply suspicion—to sustain a conviction.[3] Since there is insufficient evidence to justify the convictions on Counts 1 through 7, they must be vacated. The defendant does not contend that any error infected the conviction on Count 8 for faulty recordkeeping, and that judgment will be affirmed.

Accordingly, the judgments of sentence in Counts 1 through 7 will be vacated and the case remanded to the district court so that judgments of acquittal may be entered. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The conviction on Count 8 will be affirmed.

---

3. Defendant also contended that the government failed to disclose exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In view of our disposition of the case, we will deny the defendant's motion for an evidentiary hearing on the *Brady* issue.