GOVERNMENT OF the VIRGIN
ISLANDS Appellee,

v.

WILLIAMS, Frederico, Appellant in
No. 83–3480,

v.

AYALA, Jorge, Appellant in
No. 83–3481,

v.

GUADALUPE, Leocadio, Appellant
in No. 83–3501.

Nos. 83–3480, 83–3481 and 83–3501.

United States Court of Appeals,
Third Circuit.

Argued April 26, 1984.
Decided July 24, 1984.

Melvin H. Evans, Jr., argued, Christiansted, St. Croix, U.S.V.I., for appellant in No. 83–3480.

Gerald T. Groner, argued, Christiansted, St. Croix, U.S.V.I., for appellant in No. 83–3481.

Frank Ford, III, argued, Law Firm of Ford & Wynter, Frederiksted, St. Croix, U.S.V.I., for appellant in No. 83–3501.

Douglas L. Capdeville, argued, Asst. U.S. Atty., Christiansted, St. Croix, U.S.V.I.; for appellee.

Before SEITZ, Chief Judge, and GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

All three defendants/appellants were convicted of burglary in the third degree, grand larceny, and unlawful possession of a firearm during the commission of a crime of violence, i.e. burglary. The issues presented on appeal are whether the trial court erred (1) in denying defendants' pretrial motions to suppress evidence seized during a search of defendant Ayala's car and (2) in denying defendants' motion for judgment of acquittal on the weapons count because the evidence was insufficient to support a conviction. We find the district court's rulings proper and therefore will affirm its judgment.

### I.

On May 26, 1983 the homes of Lynn Adams and Tobias Chapin were burglarized. Ms. Adams testified that she saw and spoke to an Hispanic man who was sitting in a yellow-orange "beat up" Mazda parked near her home shortly before she discovered the burglary. The Mazda's hood was up and the man claimed that he needed a "jump." Because of his "suspicious" behavior, Ms. Adams noted his license plate number at the time. When Ms. Adams left the location of the parked car and went home, which she testified took about 30 seconds, she discovered that her home had been burglarized. One of her sons then ran outside to see if the "suspicious" man and his car were still there, but they were not. She called the police about the burglary and described the car and occupant; she also gave the police the license plate number.

At trial, police Captain Calvin Lang testified that he received an All Points Bulletin ("APB") on May 26, 1983 describing a small yellow Mazda car, license plate number C–11760, wanted in connection with a burglary. The driver was described as an Hispanic male wearing a blue & white checkered shirt. Shortly thereafter, Captain Lang saw a car matching the description parked alongside the "Tool Box Store" located about two miles from the burglarized homes. Inside the car were three men, including an Hispanic male wearing a blue and white checkered shirt. Ayala sat in the driver's seat; Guadalupe sat in the front passenger seat; and Williams sat in the rear passenger seat.

Additional police then arrived, including Officer Steve Brown. He testified that he heard an APB describing the possible getaway vehicle as a four-door Mazda, license plate number 11760, being driven by a Hispanic male wearing a blue and white checkered shirt. Brown and Captain Lang searched the car after the defendants had

been taken to the police station. Brown saw, in plain view, a camera partially concealed under the right front passenger seat. Jewelry was found in the glove compartment. Two live, 38 caliber shells, and one spent shell were found in the ripped ceiling of the car.

Captain Lang also testified that he stuck his hand inside the torn cushion of the front passenger seat and found a .38 caliber gun in a holster. He testified further that it was possible that someone sitting on the seat could feel the weapon.

Additionally, the evidence showed that Ayala was wearing a blue and white checkered shirt when apprehended by police. At trial, Ms. Adams identified the yellow car and license plate number from a photograph. The yellow car was established as belonging to Ayala.

Later that same afternoon, Defendant Williams confessed, in writing, to committing both burglaries with Ayala and Guadalupe. At trial, the references to Ayala and Guadalupe contained in Williams' confession were deleted. After giving the statement, Williams showed the police where the stolen items were hidden. The Adams' family identified several items as belonging to them while Tobias Chapin, a neighbor, identified a camera as having been stolen from his home during a burglary.

Police Sergeant Julian Williams testified that none of the Appellants had a license to possess a firearm on May 26, 1983. There also was testimony that the recovered gun was operable.

## II.

Defendants Guadalupe and Ayala claim that the district court erred in denying their motion to suppress evidence seized from Ayala's car. On appeal, we must decide whether the challenged search and seizure violated defendant's Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978).

An essential element to a successful challenge of a search and seizure of a car on Fourth Amendment grounds is the existence of a legitimate expectation of privacy. *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). *Rakas*, 439 U.S. at 140–50, 99 S.Ct. at 428–34. There is, however, no recognition of the legitimacy of a defendant's expectations of privacy where the area searched is in the control of a third party. *Id.* at 132–33, 99 S.Ct. at 424–25. "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." *Id.* at 133–34, 99 S.Ct. at 425. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134, 99 S.Ct. at 425.

In *Rakas* the petitioners were passengers in a car which they did not own and had not leased. A search and seizure of that car produced items from the glove compartment and area under the seat. Petitioners claimed no property interest in the seized items. Nonetheless, they sought to exclude the items from being admitted into evidence against them. The Supreme Court held that petitioners failed to establish a legitimate expectation of privacy "in the areas which were the subject of the search and seizure...." *Rakas*, 439 U.S. at 149, 99 S.Ct. at 433.

Guadalupe's position in this case resembles that of the petitioners in *Rakas*. Guadalupe was a passenger in Ayala's car when items were seized. Guadalupe claimed no ownership interest in the items which he sought to exclude from evidence. The police seized these items from under the seat, inside the torn seat and inside the car's ripped ceiling.

In *Rakas*, the car's glove compartment and the areas under the seat were "areas in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy." *Rakas*, 439 U.S.

148–49, 99 S.Ct. at 433. Similarly, in this case we believe Guadalupe has offered no evidence establishing a legitimate expectation of privacy in the areas under the seat, inside the torn seat and inside the car's ripped ceiling. Nor did he claim a property interest in the items seized. Consequently, because Guadalupe had no legitimate expectation of privacy in the searched areas, we believe that the district court properly denied his motion to suppress evidence.

■ Because Ayala owned the car that was searched and seized however, we believe that he satisfied the "legitimate expectation of privacy" requirement of successful Fourth Amendment claims. While clearing that hurdle, Ayala's motion to suppress evidence fails because the existence of probable cause justified the warrantless search and seizure of his car. *See Chambers v. Maroney,* 399 U.S. 42, 48–52, 90 S.Ct. 1975, 1979–1982, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 153–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925).

■ The standard for determining the legality of a warrantless search is whether "the searching officer [has] reasonable or probable cause for believing that the automobile which he stops and seizes" contains the items he is entitled to seize. *Carroll v. United States,* 267 U.S. at 155–56, 45 S.Ct. at 285–86 *quoted in Chambers v. Maroney,* 399 U.S. at 49, 90 S.Ct. at 1980. In making such a determination this court may look at the entire record; it is not restricted to the evidence presented at the suppression hearing where the motion was denied. *See Carroll v. United States,* 267 U.S. at 162, 45 S.Ct. at 288. This is true even though defendant appeals from the denial of that motion.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) the Supreme Court reaffirmed the "totality of the circumstances analysis" to decide the probable cause question. In this case, the evidence can be briefly summarized as follows: A police dispatcher radioed officers that a burglary was reported in East Clairmont based on a call from the owner of the burglarized home. The car was described as a yellow Mazda and the license plate number was given. The car's driver was described as an Hispanic male wearing a blue and white checkered shirt. The car was last seen in the East Clairmont area.

■ Within thirty minutes of this transmission, Captain Lang saw a yellow Mazda pointing in a direction away from East Clairmont. The car was about two miles away from the burglarized home. The car's driver was an Hispanic male and it contained two other males. Based on this corroborating evidence, the police took the driver as well as the two other passengers into custody.

We believe that under a totality of circumstances analysis this evidence amply supports a finding of probable cause to search and seize Ayala's car. The officers' moves were based on a report from a citizen whose honesty the police had no reason to question. Her information was corroborated for the most part by the police's own observation of defendant Ayala and his car. The mere presence of three individuals in Ayala's car rather than just the one reported would not necessarily invalidate an otherwise valid finding of probable cause. An inference could have been reasonably drawn that the reported suspect had been since joined by his accomplices. *See Bailey v. United States,* 389 F.2d 305, 309 (D.C. Cir.1967).

For these reasons we believe that the district court did not err in denying defendant's motions to suppress the evidence secured during search and seizure of Ayala's car.

### III.

The final issue we consider is whether the district court erred in denying defendants' motion for acquittal.

Defendants argue that the evidence is insufficient to support a finding of guilt as to the weapons count, Count V. Specifically, Count V charges that the defendants aiding and abetting each other, when not authorized by law to [do] so, did possess

and carry about their persons a firearm used during the commission of a crime of violence to wit: the aforementioned burglaries, in violation of Title 14 V.I.C., § 2253(a) and § 2254.

Appendix at 42.

■ This court's standard of review of a denial of a motion for acquittal on the ground of insufficiency of evidence is narrow. We must determine whether there is substantial evidence, when viewed in a light most favorable to the government, to support a jury's finding of guilt beyond a reasonable doubt as to the weapons count. *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. United States Gypsum Co.*, 600 F.2d 414, 416–17 (3d Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).

■ In reaching our decision we must give the government the benefit of the inferences to be drawn from the evidence. *See Glasser v. United States*, 315 U.S. at 80, 62 S.Ct. at 469; *United States v. De Cavalcante*, 440 F.2d 1264, 1273 (3d Cir.1971). The nexus between the evidence and the guilty verdict must be logical and convincing. *United States v. Bycer*, 593 F.2d 549, 550 (3d Cir.1979). However, "[t]he fact that evidence is circumstantial does not make it less probative." *Id.*, at 551; *See also Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). "The evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *United States v. Allard*, 240 F.2d 840, 841 (3d Cir.1957).

In this case defendants challenge their conviction under Title 14 V.I.C., § 2253(a) which provides in pertinent part:

"(a) Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any descrip-

tion any firearm, ... loaded or unloaded, may be arrested without a warrant, ... except that ... *if such firearm ... was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence ..., such person shall be fined ... or imprisoned..."* (emphasis added)

Title 23 V.I.C. § 451(e), reads in pertinent part:

"(e) 'Crime of violence' means any of the following crimes, or an attempt to commit any of the same, namely: ... burglary, housebreaking, breaking and entering and larceny."

Here, defendants were convicted of burglary, a "crime of violence." None of the defendants was authorized by law to possess or transport the gun which was confiscated from Ayala's car. Thus, the question we must decide is whether there is a logical and convincing connection between the facts established and the guilty verdict as to the weapons count. *United States v. Bycer*, 593 F.2d at 550. We believe that the jury reasonably could have inferred that the defendants' were guilty as to the weapons count.

■ The evidence established that Ms. Adams saw Ayala in his car parked near her home shortly before she discovered that her home had been burglarized. After discovering the burglary, the police radioed an APB based on her information. Within half an hour of that APB, Ayala, Guadalupe and Williams were spotted in Ayala's car about two miles from the Adams' home. Under the front seat and in the ceiling of the car the police found the fruits of the burglaries. In addition to finding in the ceiling a bag of marihuana that Williams confessed was taken from one of the burglarized homes, the police found two live .38 caliber shells, and one spent shell. Moreover, a loaded .38 caliber gun was found when Captain Lang stuck his hand inside the torn cushion of the front passenger seat. Captain Lang testified that it was possible for someone sitting on the

front seat to feel the gun. The defendants were charged with aiding and abetting each other in the commission of the weapons count. The jury reasonably could have inferred that each defendant "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishes to bring about, that he [sought] by his action to make it succeed." *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949), quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938).

The defendants' objection to their conviction on the weapons count rests on a faulty and deceptive premise. Their deceptive premise is that the government must prove "that the gun left the car or that it was possessed during the breaking and entering..." Brief of Ayala at 11; see also brief of Guadalupe at 4; brief of Williams at 2(d). Defendant Ayala argues further that:

> [l]ogic does not compel the conclusion that the gun left the car. Common sense does not dictate that the gun left the car. Conjecture and surmise are the only methods by which can be concluded, beyond a reasonable doubt, that the pistol was carried into one of the burglarized dwellings.

Brief of Ayala, at 11–12. Were we to accept the defendants' deceptive premise and their logic, a judgment of acquittal would be granted.

However, the firearms statute does not require that the gun be taken into the dwelling. The statute prohibits the transportation or possession of a firearm during the commission or attempted commission of a crime of violence. Following defendants' arguments to their logical conclusion, the traditional lookout for a burglary or robbery would have a special immunity under the criminal law if he keeps his gun hidden in the car which serves as his lookout position; his activity would have to be judged

separately from the burglary or robbery committed by his fellow conspirators.

Defendants' argument can be shown by the following hypothetical. Assume there were three persons involved in the robbery of a bank and that as the lookout and driver one of the persons remained in a getaway car parked in front of the bank. Assume further that on the front seat he had a revolver which he intended to use to deter others from apprehending his cohorts. By defendants' logic the getaway driver would not have violated the firearms statute because he did not take the gun into the bank. To accept such sophistry, one would be disregarding the admonition of Justice Frankfurter who reminded us some decades ago that "[t]here comes a point where this court should not be ignorant as judges of what we know as men [and women]." *Watts v. State of Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949). We know that the getaway car and the lookout are integral parts of burglaries and robberies.

We hold that the gun can be a part of the process to aid and abet the burglary and to violate the aforementioned firearms statute. Thus, a jury could infer that a gun was used by the lookout to protect his compatriots in their successful burglary. As Judge Weis wrote, speaking for the court in *United States v. Bycer,* 593 F.2d at 550,

> Inferences from established facts are accepted methods of proof when no direct evidence is available. It is essential, however, that there be a logical and convincing connection between the facts established and the conclusion inferred.

*Id.*

In this case we find that there is a logical and convincing connection between the facts established and the conclusion that the firearms act was violated. In short, the jury reasonably could have inferred that the gun in the car was part of the scheme and effort to burglarize.[1]

---

**1.** Based on this evidence the jury reasonably could have inferred as follows: that Ayala possessed the gun to protect the other two defendants during the commission of the burglary. As an armed "lookout" he could advance the aim of the burglary by protecting those inside if they

Consequently, we will affirm the judgment of the district court in denying defendants' motion for judgment of acquittal.[2] We also will affirm the district court's denial of defendants' motion to suppress evidence seized from Ayala's car.

were in danger of apprehension or physical harm. The gun was placed inside the seat so as not to be visible to innocent bypassers but easily accessible to Ayala. The ability for Captain Lang to stick his hand into the front seat to get the gun could reasonably have been a basis for the jury's inferring that the design of this hiding spot was to maintain secrecy of possession while permitting easy access to repel potential interferers.

**2.** In our review of the record we note that although the defendants were convicted of possession of a firearm during the commission of a crime of violence, the judgments which were entered list only "possession of an unlicensed firearm." It may be that the judgment entries were inadvertent and can be corrected so that they will be consistent with the trial record and verdict. Certainly no substantive disadvantage accrues to the defendants because of this discrepancy.