278

UNITED STATES of America,

v.

Keir HODGE, Appellant.

No. 03–1696.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
34.1(a) Nov. 20, 2003.

Decided Dec. 3, 2003.

George S. Leone, Ricardo Solano, Jr., Newark, NJ, for Appellee.

Rocco C. Cipparone, Jr., Haddon Heights, NJ, for Appellant.

Before RENDELL, BARRY and MAGILL,* Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Keir Hodge levels numerous challenges to the conduct of his trial and sentencing in the United States District Court for the District of New Jersey. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Hodge was convicted of conspiracy to distribute and possession with intent to distribute Ecstasy, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. He was sentenced to an aggregate term of 181 months with 3 years of supervised release.

Hodge's arrest was the result of an investigation into another seller, who eventually led an undercover Drug Enforcement Agency (DEA) agent to Hodge. Subsequently, Hodge agreed to supply a quantity of Ecstasy that would be sold to the undercover agent. Hodge was arrested during that sale. While in jail, Hodge made various phone calls from his cell that were recorded. In these conversations, there was discussion regarding other bad acts, as well as other information about the crimes charged. Tapes of these conversations were admitted at trial.

We will review Hodge's specific challenges as he presents them:

---

* Honorable Frank J. Magill, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

### 1. Jury instruction regarding intent to distribute.

█ The Court instructed the jury that where a large quantity of drugs is possessed by someone, it may be reasonable to infer that the person intends to distribute the drugs. Hodge contends that the instruction given was improper in that it gave a specific example related to the case at hand, thus prejudging a fact that should have been decided by the jury. We disagree. Here, the judge did not tell the jury that the inference was mandatory, and the entire instruction makes it clear that it was up to the jury to decide whether the quantity involved was enough to support the necessary inference. The language of the instruction also did not improperly incorporate or prejudge any specific facts at issue in the case. We will not restrict the District Court's ability to give instructions, as Hodge urges. A jury may, on facts like those presented in this case, infer intent to distribute from the large amount of drugs seized.[1] *See United States v. Rodriguez,* 961 F.2d 1089, 1092 (3d Cir.1992).

### 2. References in tape recorded conversations to bad acts.

█ Conversations recorded while Hodge was in jail were admitted at trial, and they included admissions by Hodge, as well as references to other offenses. Specifically, in these conversations Hodge admitted to having had a prior gun-related charge, and to participating in additional marijuana transactions. Hodge contends that these references to other acts should have been redacted. However, the District Court did not abuse its discretion in admitting the tapes. The statements about the prior gun charge were somewhat ambiguous. Also, to the extent that they do clearly refer to another gun-related offense, they are relevant as to an element of one of the charged offenses, namely, Hodge's "knowing" possession of a firearm. Thus, under Rule 404(b) the prior statements are admissible without redaction to show knowledge. While this element was eventually covered in a stipulation between the parties, at the time that the tapes were introduced, Hodge had not yet conceded knowledge. Any prejudice that might result from admitting the statements was outweighed by their probative value with respect to the gun charge in the instant case.

█ In addition, the conversations involving other marijuana transactions tended to show that Hodge possessed the mental state required for the conspiracy, thus rebutting his defense that he did not intend to participate in a conspiracy to distribute, but just meant to "rip off" the buyer without actually selling the drugs. Also, the statements establish a continuing relationship with an unindicted co-conspirator and were therefore properly admitted.

1. We note that in referencing our holding in *United States v. Bycer,* 593 F.2d 549 (3d Cir. 1979), the District Court may have expanded the limited applicability of our reasoning there. In discussing the jury instructions with counsel, the judge stated that *Bycer* "doesn't permit the instruction to be given that it may be reasonable to infer that a person who possesses large amounts of a controlled substance does not do so for his own personal use, rather such possession may in itself indicate an intent to distribute." (A– 52). But, *Bycer* presented a unique factual scenario, involving a pharmacist who was convicted of distributing a controlled substance after discrepancies were detected in his inventory records. 593 F.2d at 550–51. We held that on those facts—where the defendant pharmacist legally possessed the drugs and did not have exclusive control over the inventory—it was improper to allow an inference of intent to distribute based on the quantity of drugs involved. *Id.* at 552.

*United States v. Vega,* 285 F.3d 256, 261 (3d Cir.2002).

Accordingly, we find the tapes to have been properly admitted without the requested redaction, and the District Court did not abuse its discretion.

### 3. Hearsay in the tape recorded conversations.

One of the conversations admitted at trial was between Hodge's girlfriend and another unidentified male who was relating information from someone referred to as "Nice Guy." The background voice ("Nice Guy") tells the male what to say, and then he repeats it. Hodge contends that this is inadmissible hearsay. However, an officer identified the voice in the background as Hodge's, and another witness confirmed that Hodge is called "Nice." Thus, the Court properly concluded that the male was speaking as an agent of Hodge and, as such, his statements were admissible against Hodge as his own admission. Because such a statement made by a party is admissible non-hearsay under Rule 801(d)(2), the Court did not abuse its discretion in admitting the tape.

Hodge also complains that the speaker should have been identified before the tape was admitted. While we have acknowledged that identifying speakers on a tape is one factor to consider in examining their foundation, this is not dispositive. *United States v. Starks,* 515 F.2d 112, 121 n. 11 (3d Cir.1975). Further, here, Hodge does not attack the authenticity of the tape, and given the fact that the unidentified speaker is merely a mouthpiece for what has been identified as Hodge's voice, we find any error in this regard to be harmless.

### 4. Admission of pretrial guilty plea as to Count 3.

 Hodge pled guilty to possession of a firearm by a convicted felon before trial, and he now complains that evidence of this plea admitted at trial was unduly prejudicial. However, he raised no Rule 403 objection at trial, he chose not to withdraw his guilty plea pursuant to Rule 410, and he agreed to a stipulation whereby the jury was informed of his plea with an immediate limiting instruction. Accordingly, there was no plain error.

### 5. Suppression of taped phone conversations.

 Hodge contends that his taped phone conversations should have been suppressed because he did not consent to the recording and it constituted an illegal wiretap. However, we need not dwell on this issue because the record is clear that Hodge had adequate notice of the taping of calls and essentially consented to the recording. Testimony revealed that every telephone call made from the jail was preceded by a message warning both the caller and the recipient that the call would be recorded and monitored. (SA 10–12, 111–112, 117). In order to proceed with the call, the recipient had to accept it by pressing a number, and the taping of the call only began at that time. Further, when Hodge was booked on March 9, he signed a PIN request form, which indicated that all inmate calls are subject to recording, monitoring, and listening.[2]

---

**2.** All but one of the relevant recorded calls were made on or after March 9. We have little difficulty finding that Hodge consented to the recording of these conversations. *See United States v. Corona–Chavez,* 328 F.3d 974, 978 (8th Cir.2003) (finding implied consent where an inmate chose to proceed with a phone call after receiving notice of recording); *United States v. Hammond,* 286 F.3d 189, 192 (4th Cir.2002) (same); *United States v. Footman,* 215 F.3d 145, 155 (1st Cir.2000) (same); *United States v. Van Poyck,* 77 F.3d 285, 292 (9th Cir.1996) (same).

### 6. Aggravating role enhancement at sentencing.

■ The District Court applied a two-level enhancement under the Sentencing Guidelines § 3B1.1(c) after finding that Hodge was an organizer and played an aggravated role in the conspiracy. Hodge urges that the Pre–Sentencing Report (PSR) recommended that he not receive this enhancement, and that it was not he, but another person, who was actually the leader of the sale in question. However, applying the clearly erroneous standard, as we must with respect to the factual findings supporting a role enhancement, we cannot conclude that the District Court clearly erred when it rejected the recommendation of the PSR. *See United States v. Bethancourt*, 65 F.3d 1074, 1080 (3d Cir.1995). There was a sufficient factual basis cited by the District Court, including the findings that Hodge received much more money than others, that he had authority over other people involved in the conspiracy, that he planned or approved everything that occurred on the day of the sale, and that he provided the Ecstasy. Accordingly, we find no clear error.

### 7. Obstruction of justice enhancement.

■ The District Court also applied a two-level enhancement for obstruction of justice under the Sentencing Guidelines § 3C1.1—an enhancement that was recommended in the PSR—based on evidence that Hodge concealed a much larger amount of Ecstasy that was meant to be sold as part of the deal. Hodge urges that there was an insufficient factual basis for this determination. However, once again, the District Court's determination was not clearly erroneous, as the factual basis was shown. Hodge admitted to concealing the Ecstasy in a phone call, and a co-conspirator testified that Hodge had admitted concealing a larger amount of Ecstasy near the location of the intended sale. Accordingly, the Government met its burden of proving the applicability of this enhancement by a preponderance of the evidence, and we find no error.

For the foregoing reasons, we will AFFIRM the District Court's rulings and its order of judgment and conviction in this case.