**UNITED STATES of America,**
**Plaintiff,**

v.

**Jamie Juan ABRAMS, Defendant.**

**No. 3:04cr149.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 2, 2005.

---

Cheryll A. Bennett, Federal Public Defender, Dayton, OH, for Defendant.

Margaret Mary Quinn, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (DOC. # 17); DECISION AND ENTRY SUSTAINING GOVERNMENT'S MOTION FOR PRETRIAL CONFERENCE (DOC. # 28); CONFERENCE CALL SET

RICE, District Judge.

Defendant Jamie Abrams ("Defendant" or "Abrams") is charged in the Indictment (Doc. # 1) with one count of possessing with intent to distribute in excess of five grams of crack cocaine and cocaine, in violation of 21 U.S.C. § 841; one count of using and possessing a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). Those charges stem from the evidence that was seized after the stop and search of the automobile in which Abrams had been riding during the evening of July 30, 2004, as well as the statements he made to officers after that stop. Defendant has filed a motion, requesting that the Court suppress the evidence which was seized and the statements he made. *See*

Doc. # 17. On April 15, 2005, the Court conducted an oral and evidentiary hearing on that motion, and the parties have filed their post-hearing memoranda. *See* Docs. ## 26 and 27. The Court now rules upon the Defendant's motion.

In July, 2004, Detectives Donnie Williams ("Williams") and Thomas Engles ("Engles"), both of whom were then assigned to the C.A.N.E. Unit of the Montgomery County Sheriff's Department,[1] began to investigate the alleged narcotics trafficking activities of Christy Steeleman ("Steeleman") and someone named "Red." This investigation included surveillance conducted on a residence at 252 Illinois Avenue, in Dayton. An informant had told the officers that Steeleman and "Red" lived in that residence. The informant had also told the officers that the two suspects were using a white Chevrolet Caprice with a temporary Ohio registration. Engles had observed that vehicle at 252 Illinois Avenue.

Desiring to discover the true identity of "Red," Williams, on July 30, 2004, asked Officers Willy Hooper ("Hooper") and Rick Elworth ("Elworth") of the Dayton Police Department to follow the Chevrolet Caprice and to stop it, if probable cause existed to believe that a traffic offense had been committed. Hooper and Elworth agreed. In order to make certain that one of them was able to observe that vehicle being driven, Hooper and Elworth decided that the former would position himself south of 252 Illinois Avenue, while the latter would be north of that location. In the meantime, Williams and Engles conducted surveillance on that residence. After Engles saw Steeleman and a male get into the Chevrolet Caprice parked in an alley in the vicinity of 252 Illinois Avenue

---

1. C.A.N.E. is an acronym for Combined Agency Narcotics Enforcement.

and drive away in it, he informed Williams who, in turn, told Hooper and Elworth.

That vehicle was driven south, toward Hooper, who spotted it near the corner of Connecticut and Edgar Avenues. He told Elworth that he had seen the Chevrolet Caprice, and the latter responded to that area. Hooper followed the vehicle to see if a traffic offense would be committed, which would give him probable cause to stop it. As he followed the Chevrolet Caprice, he noticed that it had a cracked windshield, which rendered it an unsafe vehicle. Hooper was aware that driving such a vehicle constitutes a traffic offense. He also saw two young children, below the age of four playing and jumping around in the back seat, rather than being restrained in child restraint seats. As a consequence, Hooper decided to stop the Chevrolet Caprice and activated the lights on the top of his police cruiser. That vehicle pulled over on Wilmington Avenue just south of the intersection of that street and Wayne Avenue. After Hooper had stopped the Chevrolet Caprice, Elworth parked his cruiser behind Hooper's.

Hooper approached the driver's side of the Chevrolet Caprice and asked Steeleman, the driver, for her license. She was unable to give a driver's license to Hooper, who discovered that her driving privileges had been suspended. Although Steeleman did not produce a registration for the Chevrolet Caprice, she disclaimed an ownership interest in that vehicle and told Hooper that the Defendant owned it. Hooper wrote traffic tickets to Steeleman for, *inter alia*, driving with the cracked windshield, permitting the children to ride without being properly restrained and driving under a suspension. Steeleman was not arrested. She subsequently entered guilty pleas to the charges.

While Hooper was interacting with Steeleman, Elworth approached the passenger side of the Chevrolet. He asked the male passenger for identification. That individual did not have any identification; he indicated that his name was "Red." Elworth then asked the individual for his full name and social security number. The officer was given a name and a social security number. Based upon his experience, Elworth believed that he had been given false information. As a consequence, he asked the passenger to get out of the Chevrolet Caprice and, after patting him down, to have a seat in the back of his cruiser.[2] When the two were seated in Elworth's cruiser, the officer entered the name and social security number which he had been given into the computer in that cruiser. As a result, it became apparent to the officer that the male passenger had given him a false name and social security number. Elworth then asked the male passenger for his real name and social security number. The latter identified himself as Abrams and gave Elworth a social security number. The officer entered this information and discovered that there was an outstanding arrest warrant for the Defendant for parole violation. After assuring himself that the warrant was valid, Elworth told the Defendant that he was being placed under arrest on the outstanding warrant.

Since Abrams was under arrest and Steeleman was unable to drive due to the fact that her license was suspended, the officers decided to have the Chevrolet Caprice towed. In accordance with Dayton Police Department policy, Elworth conducted an inventory search of that automobile. In its trunk, he discovered a backpack. Upon searching the backpack, Elworth found a semiautomatic machine

---

**2.** Elworth did not discover a weapon on the male passenger of the Chevrolet Caprice.

gun, a bag of powder cocaine and a bag of crack cocaine.[3]

After discovering those items, Elworth returned to his cruiser and told Defendant about what he had discovered in the backpack. The officer then recited the requisite *Miranda* warnings to him. Elworth also asked the Defendant whether he understood his rights or had any questions about them. In response, Abrams indicated that he had no questions and that he understood his rights. After informing the Defendant about his rights, Elworth asked the Defendant if the gun and drugs were his. Abrams denied that they were. The officer also suggested to the Defendant that he might be able to help himself if he cooperated.

After completing his duties at the scene of the traffic stop, Elworth transported the Defendant to the Second District Headquarters, which is on Wayne Avenue just around the corner from where the Chevrolet Caprice had been stopped. Elworth placed the Defendant in an interview room in that facility. Because he had gotten the impression that the Defendant was willing to cooperate with officers, Elworth had asked Williams and Engles to meet him at that police facility, so that the detectives could interview Abrams. The detectives met the Defendant in the interview room. Engles explained that he understood that Elworth had provided the requisite *Mi-*

*randa* warnings. The Defendant responded that the officer had read him those rights. Neither Detective provided those warnings to the Defendant again before he was questioned. Engles also explained that he had been led to believe that the Defendant was willing to cooperate with officers. Although the Defendant steadfastly denied that the drugs and weapon found in the backpack in the trunk of the Chevrolet Caprice were his, he did admit to involvement in the drug trade, indicating that he was quite good at cooking cocaine into crack.

Subsequently, Engles discovered that the Chevrolet Caprice, in which the Defendant had been traveling on July 30, 2004, was registered to Rhonda Simpson. Engles interviewed Simpson, who explained that she had sold that automobile to an individual named "Red." She also identified the Defendant as "Red" from a lineup.

In his post-hearing memorandum (Doc. # 26), the Defendant raises two arguments, to wit: 1) the evidence seized from the Chevrolet Caprice must be suppressed because the inventory search was invalid given that the officers were not authorized to tow that vehicle; and 2) his statements to Williams and Engles must be suppressed because of a violation of the rule established by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[4]

---

3. The charges against Abrams in this prosecution are based upon the items Elworth discovered inside the backpack.

4. Notably, the Defendant does not argue that Hooper violated his rights under the Fourth Amendment by stopping the Chevrolet Caprice. Indeed, such an argument would have been fruitless, since Hooper had probable cause to believe that § 4511.81 of the Ohio Revised Code was being violated. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding the stop of a vehicle does not violate the Fourth Amend-

ment when a police officer has probable cause to believe that a traffic violation has occurred, regardless of the officer's subjective motivation for the stop). That statutory provision prohibits, *inter alia*, operating a motor vehicle with a child less than four years of age who is not being restrained in a child restraint seat. Hooper testified that, before stopping that vehicle, he had observed two children under that age bouncing around the back seat without being so restrained.

In addition to disputing the Defendant's assertion that his rights under *Miranda* were violated, the Government argues that the Court should decline to suppress the evidence seized from the Chevrolet Caprice, because the Defendant did not have a reasonable expectation of privacy in that vehicle and, thus, is without standing to seek the suppression of the evidence seized from within.[5] As a means of analysis, the Court will initially discuss the parties' arguments pertaining to the suppression of the evidence seized from the vehicle in which the Defendant had been traveling, following which it will turn to the request to suppress his statements.

## I. Suppression of Evidence Seized from Chevrolet Caprice

■ The Government argues that the Court cannot suppress the evidence seized from the Chevrolet Caprice, because the Defendant did not have a reasonable expectation of privacy in that automobile and, therefore, is without standing to seek such suppression. According to the Government, the Defendant has failed to met his burden of establishing that he had such

a reasonable expectation of privacy.[6] This Court cannot agree. The Defendant was the owner of the Chevrolet Caprice and was in it when it was stopped.[7] Courts have generally held that the owner of a vehicle has a reasonable expectation of privacy in it. *See e. g., Government of Virgin Islands v. Williams,* 739 F.2d 936, 939 (3d Cir.1984); *United States v. Cella,* 568 F.2d 1266, 1284 (9th Cir.1977); *United States v. Wisniewski,* 358 F.Supp.2d 1074, 1085 (D.Utah 2005). *Accord,* 6 LaFave, *Search and Seizure,* § 11.3(e) (4th Ed.2004). The Sixth Circuit has held that, under some circumstances, the owner of an automobile may not have standing to challenge its search. *See United States v. Jenkins,* 92 F.3d 430 (6th Cir.1996), *cert. denied,* 520 U.S. 1170, 117 S.Ct. 1436, 137 L.Ed.2d 543 (1997).[8] However, neither the Sixth Circuit nor any other court has suggested that the owner of an automobile who occupied it when it was stopped was without standing to challenge its search. Accordingly, the Court rejects the Government's proposition that the Defendant is without standing to challenge the search in question.

---

5. Although the Government has briefed two issues not raised by the Defendant (i.e., whether the stop of the Chevrolet Caprice and/or the Defendant's detention after the stop violated the Fourth Amendment), it has inexplicably declined to address the question of whether the inventory search of that vehicle was valid.

6. It is axiomatic that a defendant has the burden of showing that had a reasonable expectation of privacy in the area searched. *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Berryhill,* 352 F.3d 315, 316–17 (6th Cir.2003), *cert. denied,* 542 U.S. 944, 124 S.Ct. 2924, 159 L.Ed.2d 824 (2004).

7. In arguing that the Defendant is without standing, the Government does not acknowledge that fact that the Chevrolet Caprice was owned by the Defendant.

8. In *Jenkins,* the Sixth Circuit discussed and distinguished its earlier opinion in *United States v. Blanco,* 844 F.2d 344 (6th Cir.1988). In *Blanco,* the defendant, who was treated as the owner of an automobile, had rented that car, giving both his own name and the name of an additional driver on the rental form. The defendant then immediately gave sole control of the automobile to the person named as the additional driver, who drove it from Florida to Ohio with a load of drugs, where it was stopped. In *Blanco,* the Sixth Circuit held that the defendant in Florida did not have standing to object to a search of the car in Ohio. In *Jenkins,* the Sixth Circuit held that the absentee owner of a tractor trailer had standing to challenge the search of the trailer, because he had locked it and kept its key.

Defendant argues that the Court must suppress the evidence which was seized from his automobile, since the officers were not authorized to tow it. It is well-established that law enforcement officers may conduct a warrantless, inventory search of a vehicle prior to impounding it and having it towed, provided that the vehicle is impounded and towed in accordance with an official procedure. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Hurst,* 228 F.3d 751, 758 (6th Cir.2000). Thus, the question becomes whether Hooper and Elworth had the Defendant's vehicle towed in accordance with such an official procedure. The official procedure authorizing police officers employed by Dayton to have vehicles towed is set forth in § 76.08 of the Revised Code of General Ordinances for the City of Dayton, which provides in pertinent part:

> Members of the Police Department are authorized to remove or direct the removal of a vehicle under any of the following circumstances:
>
> \*     \*     \*     \*     \*     \*
>
> (C) *Arrest and Detention of the Driver.* Whenever the driver or the person in charge of any vehicle is placed and taken into custody and detained by police under circumstances which leaves or will leave a vehicle unattended.

Defendant argues that § 76.08(C) did not authorize Hooper and Elworth to tow his vehicle, since Steeleman, its driver, was given traffic tickets, rather than being arrested and taken into custody. Although the Court does not dispute Defendant's factual predicate, it cannot agree that the failure to arrest Steeleman means that § 76.08(C) did not authorize the Chevrolet Caprice to be towed. Steeleman had disclaimed any ownership interest in that vehicle and had told Hooper that Abrams owned it. As a consequence, the Defendant was clearly in charge of the vehicle he owned. In addition, he had been arrested and taken into custody as a result of the outstanding arrest warrant for him. Moreover, the Chevrolet Caprice would have been left unattended, if left on Wilmington near the corner of Wayne. Steeleman could not have driven it away, given that she was without a driver's license. She also could not have otherwise attended to it, since she had to look after the two young children who had been in the rear of that vehicle. Therefore, the Court concludes that § 76.08(C) authorized Hooper and Elworth to have the Chevrolet Caprice towed. Since Dayton Police Department policy required an inventory search prior to towing a vehicle, in order to prevent loss of property and the potential liability therefor, the Court concludes that inventory search of the Defendant's vehicle and the concomitant discovery of the weapon and drugs therein did not violate his Fourth Amendment rights.

Accordingly, the Court overrules the Defendant's Motion to Suppress Evidence and Statements (Doc. # 17), as it relates to the evidence seized from the Chevrolet Caprice.

## II. Suppression of Statements

At the scene of the traffic stop, Elworth provided the requisite *Miranda* warnings to the Defendant, who indicated that he understood them and that he had no questions about them. Later at Second District Headquarters, Engles confirmed with the Defendant that Elworth had explained his rights to him. However, the Defendant argues that the Court must suppress his statements, because Elworth failed to inform him that he had a right to counsel, as required by *Miranda. See* Doc. # 26 at 10. This Court cannot agree.

In *United States v. Tillman,* 963 F.2d 137, 141 (6th Cir.1992), the Sixth Circuit discussed the manner in which the rights covered by *Miranda* must be conveyed to a suspect before he is subjected to a custodial interrogation:

> The United States Supreme Court has recently held as follows:
>
>> We have never insisted that Miranda warnings be given in the exact form described in that decision. In *Miranda* itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." [*Miranda v. Arizona* ], 384 U.S. 436], at 476, 86 S.Ct. 1602, 16 L.Ed.2d 694 [ (1966) ] (emphasis added). *See also Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (referring to "the now familiar *Miranda* warnings ... or their equivalent"). In *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), we stated that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Id.,* at 359, 101 S.Ct. 2806. ... The prophylactic *Miranda* warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda.*" *Prysock, supra,* 453 U.S. at 361, 101 S.Ct. 2806.

*Duckworth v. Eagan,* 492 U.S. 195, 202–3, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (emphasis in original) (footnote omitted).

In *Duckworth,* the police told the defendant he would be supplied an attorney if and when he went to court. The Supreme Court held that this was sufficient since defendant knew he had a right to counsel.

. . . . .

> Although there is no mandate that "magic words" be used, there is a requirement that all elements of *Miranda* be conveyed.

*Id.* at 141.

Elworth testified that he recited the *Miranda* warnings to the Defendant from memory, rather than reading them from a card. Transcript of April 15, 2005, Evidentiary Hearing (Doc. # 23) at 48. In response to a question from the Government's counsel about what he had told the Defendant, Elworth explained:

> I told him what I found and he had the right to remain silent. I told him anything he said could be used against him in a court of law. *I told him that he did, in fact, have a right to an attorney;* and if he couldn't afford one, one would be appointed to him free of charge, either a court appointed attorney or a public defender.

*Id.* (emphasis added). Simply stated, the foregoing testimony has caused this Court to find that all elements of *Miranda* were conveyed to the Defendant by Elworth.

Accordingly, the Court overrules the Defendant's Motion to Suppress Evidence and Statements (Doc. # 17), as it relates to his statements.

The Government has also filed a Motion for Pretrial Conference (Doc. # 28). The Court sustains that motion and schedules a telephone conference call on Friday, August 5, 2005, at 8:30 a.m., for the purpose of selecting a new trial date for this prosecution.