**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dennis VEAL, Defendant–Appellant.**

**No. 92–2145.**

United States Court of Appeals,
Sixth Circuit.

Argued March 7, 1994.

Decided April 13, 1994.*

* This decision was originally issued as an "unpublished decision" filed on April 13, 1994. On May 3, 1994, the court designated the opinion as one recommended for full-text publication.

Jonathan Tukel (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Herbert A. Jordan (briefed), Detroit, MI, Derrick A. Carter (argued), School of Law Library, Documents Dept., Valparaiso University, Valparaiso, IN, for defendant-appellant.

Before: NELSON and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

PER CURIAM.

The defendant, a registered pharmacist, was convicted on charges of violating 21 U.S.C. § 841 by distributing controlled substances illegally and by possessing controlled substances with intent to distribute them illegally. He was also convicted on charges of violating 21 U.S.C. § 827 by failing to maintain proper controlled substance records.

The defendant has appealed his conviction, contending, among other things, that the evidence was insufficient to sustain the charges against .him. Finding none of the defendant's contentions persuasive, we shall affirm the conviction.

## I.

In October of 1990 investigators from the United States Drug Enforcement Administration received reports from drug wholesalers that the defendant, Dennis Veal, was making inordinately large purchases of Doriden and Tylenol 4. Doriden, a sleeping medication, and Tylenol 4, a pain medication containing codeine, are Schedule III controlled substances.

These drugs have a heroin-like effect when ingested in combination. The combination is commonly referred to in the illegal drug market as "fours and doors." Although a registered pharmacist pays anywhere from four to seven cents per pill of either variety, a single dose of the "fours and doors" combination costs about $20 on the street.

On October 5, 1990, DEA investigators went to the defendant's pharmacy to serve him with a notice of intent to inspect his records, prescriptions, and inventory. The defendant agreed that the agents could perform the inspection four days later, at which time he said he would turn over his records. When the agents returned on October 9, the defendant asked them whether they would be removing the records. The officers answered that the records would be seized only if they were found to contain incriminating evidence. The defendant responded, "So you'll take my records." The officers reiterated that they would only take the records if they were incriminating, and the defendant made the same response. The defendant then withdrew his consent to the search, and the officers left the premises.

The officers subsequently obtained a search warrant pursuant to which they went through Mr. Veal's pharmacy records. They discovered significant discrepancies between his controlled substance purchases and the quantities that could be accounted for. The records also revealed that defendant Veal had filled numerous phony prescriptions for Doriden and Tylenol 4. Some of the prescriptions bore the name of a fictitious doctor, and others bore the names of actual doctors who testified at trial that they had not, in fact, written the prescriptions.

Mr. Veal was tried on a thirteen-count indictment, one count of which was eventually withdrawn by the government. The jury returned a verdict of guilty on six counts and not guilty on the remaining counts. A motion for acquittal or a new trial was denied, and this appeal followed.

## II.

### A. Sufficiency of Evidence

Mr. Veal contends that the evidence produced at trial was insufficient to support a conviction on any of the charges of which the jury found him guilty. The question to be answered in this regard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

As a registered pharmacist, Mr. Veal was entitled to dispense controlled substances in the usual course of his professional practice. *United States v. Hughes*, 895 F.2d

1135, 1143 n. 11 (6th Cir.1990). To convict him on the drug distribution charges, therefore, the government was required to prove (a) that Mr. Veal filled prescriptions that were not issued for a legitimate medical purpose, and (b) that he did so knowing that the prescriptions were invalid. *Id.* To prove the requisite knowledge, the government was required to show, at a minimum, that the defendant deliberately closed his eyes to wrongdoing that should have been obvious to him. *United States v. Seelig*, 622 F.2d 207, 213 (6th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980).

■ Mr. Veal did not dispute at trial that he had filled invalid prescriptions. He asserted, however, that he did not know they were invalid.

There was ample evidence to support a finding that the fraudulent character of the prescriptions should have been obvious to him. The government showed that several prescriptions were issued by a fictitious doctor, that several of the prescriptions were facially invalid, and that phone calls to the doctors named on the forged prescriptions would have uncovered the forgeries. Several experts testified about the well-known combination of "fours and doors" and stated that any reasonable pharmacist should have been suspicious of prescriptions calling for that combination. A pharmacist acting in good faith would have called to verify the prescriptions, according to the government's evidence, and Mr. Veal did not do so. The jury was not required to accept this evidence, of course, but it was entitled to do so.

Mr. Veal's reliance on *United States v. Bycer*, 593 F.2d 549 (3d Cir.1979), is misplaced. In *Bycer* the court held that a pharmacist who did not have exclusive access to controlled substances could not be convicted of illegal drug distribution charges based solely on possession of the substances and a discrepancy in the pharmacy's records. The government's evidence failed to prove that it was defendant Bycer, and not some other pharmacist, who had been responsible for the illegal distribution. In the instant case, by contrast, Mr. Veal admitted that it was he who filled the prescriptions in question; the evidence of impropriety is thus far stronger here than it was in the *Bycer* case.

■ The evidence against Mr. Veal was also sufficient to support the finding of guilt on the charges of inadequate recordkeeping. In order to convict Mr. Veal on these charges, the government was required to show only that the defendant had not kept a "complete and accurate record of each [controlled] substance manufactured, received, sold, delivered, or otherwise disposed of by him," as required by 21 U.S.C. §§ 827(a)(3) and 843(a)(4)(A). The evidence introduced at trial included the results of an extensive audit that tended to show that the defendant had failed to account for significant quantities of the controlled substances he handled. Contrary to Mr. Veal's assertions, his conviction on the recordkeeping counts is not dependent on any improper conclusion that the discrepancies in his records resulted from illegal sales. The audit assumed the validity of all of the distributions documented by Mr. Veal, and it demonstrated that Mr. Veal had still failed to account for 951 Doriden tablets (9 percent of his total purchases of Doriden during the audit period), nearly 1600 Tylenol 4 tablets (19 percent of his total purchases of Tylenol 4 during the audit period), and 3,227 Tylenol 3 tablets (21 percent of his total Tylenol 3 purchases). The government was not required to prove that the missing tablets were dispensed illegally; what actually happened to those substances has no bearing on the recordkeeping charges.

### B. *Evidentiary Issues*

■ The government questioned Mr. Veal at trial about his purchase of certain real estate for approximately $17,000 in cash and his funding of trusts for his children with $20,000 in cash. When it was brought out that the income reported on his tax returns did not appear large enough to explain his possession of so much cash, the defendant testified that the money came from the repayment of a loan. In what was obviously an attempt to discredit this explanation, the prosecutor asked Mr. Veal whether he had declared the loan repayment on his tax return; he replied that he had not.

Although the defendant now objects to this question, no objection was raised at trial. The failure to object was unfortunate, because the receipt of principal on a loan, unlike the receipt of interest, is not the receipt of taxable income. If there had been a timely objection, this matter would undoubtedly have been clarified for the jury. Only one of the prosecutor's questions in this area was objectionable, however, and it represented a relatively minor point in a relatively long and complex trial. The judge instructed the jury that questions and comments by the attorneys were not to be considered evidence, and we are not persuaded that any prejudice that may have resulted from the improper question and the defendant's answer to it was so great as to necessitate a new trial.[1]

■■■ Mr. Veal also claims error in the court's admission of evidence regarding the incriminating statements he made when agents came to his pharmacy to inspect his records. The government submits that these statements were admissible to show Mr. Veal's consciousness of guilt. Mr. Veal seemed to agree at trial that they had a bearing on this, because he objected on the basis of his Fifth Amendment right against self-incrimination. He now contends, however, that admission of these statements was improper because it penalized him for invoking his Fourth Amendment right to be free from a warrantless search.

Since Mr. Veal did not raise the Fourth Amendment issue at trial, he cannot prevail on it now unless the district court committed plain error. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). It is hard for us to see how the Fourth Amendment could be implicated here, the defendant admittedly having consented to the search and not having withdrawn his consent by the time the statements were made. When the exchange about incriminating evidence occurred, the agents thought they were conducting a search by consent. In the absence of an objection on Fourth Amendment grounds, in any event, we cannot fault the district court for admitting the statements as evidence of the defendant's consciousness of guilt.

■■■ Mr. Veal contends that the trial court erred in not allowing him to submit evidence that the government originally miscalculated the number of bogus prescriptions. This evidence was offered to show that the government's investigation of the case had been, as the defendant put it, "sloppy." The district court ruled that the evidence was irrelevant and noted that the jury would not be called upon to determine whether the government's investigation had been good or bad. Mr. Veal argues that the ruling compromised his Sixth Amendment right to confront the witnesses against him.

"The exclusion of evidence on the grounds of relevancy is within the discretion of the trial court." *McLaurin v. Fischer*, 768 F.2d 98, 104 (6th Cir.1985). We find no abuse of that discretion here.

■■■ Finally, Mr. Veal takes issue with a passage in the prosecutor's closing argument suggesting that the defendant was the only witness with a motive to lie. Again there was no contemporaneous objection, and again we find no plain error. Questioning a defendant's veracity is not tantamount to saying that he should be presumed guilty or that he need not be proved guilty beyond a reasonable doubt. The prosecutor did not suggest that Mr. Veal should not be believed because he stood accused of a crime, but because he had a motive to lie. Mr. Veal clearly put his veracity at issue by taking the stand, and the prosecutor's argument on this point was not clearly improper. See *United States v. Goodapple*, 958 F.2d 1402, 1409–10 (7th Cir.1992) ("the government is allowed to comment on the credibility of a witness, including the defendant, as long as the comment reflects

---

1. Mr. Veal's appellate counsel also suggests that the prosecutor's question was really an attempt to submit "other bad acts" evidence pursuant to Rule 404(b), Fed.R.Evid. The prosecutor, it is contended, should have alerted the defense in advance to the fact that such evidence would be used. We have no reason to suppose, however,

that the prosecutor knew prior to the defendant's re-direct examination that the defendant would claim that the money used in the large cash transactions came from a loan repayment. This may explain the prosecutor's error regarding the tax law; there is no reason to think that the prosecutor misrepresented anything by design.

reasonable inferences from the evidence adduced at trial"); *United States v. Hoelker*, 765 F.2d 1422, 1426 (9th Cir.1985) ("[p]rosecutors may voice doubt about the veracity of a defendant who has taken the stand where such comments are supported by the record" (internal quotes omitted)), *cert. denied*, 475 U.S. 1024, 106 S.Ct. 1219, 89 L.Ed.2d 330 (1986).

AFFIRMED.