**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 06a0139n.06
Filed: February 21, 2006

**No. 05-3250**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellee,**

**v.**

**SAMUEL E. JOHNSON,**

    **Defendant-Appellant.**

                                  /

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO**


**BEFORE:**    **COLE, CLAY and GIBBONS, Circuit Judges.**

    **CLAY, Circuit Judge**. Defendant, Samuel Johnson, appeals his conviction for aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2), arguing that the government's remarks at trial were improper and constituted reversible error. For the reasons set forth below, we **AFFIRM** Defendant's conviction.

I.

    Federal & State Corporate Advisors, Inc. ("F&S") was a business organized for the purpose of administering job tax credit programs for large corporations. These are federal government programs that offer corporations incentives to reduce their tax burden. The Work Opportunity Tax Credit Program ("WOTC"), authorized by the Small Business Job Protection Act of 1996, is one

such program that enables a large corporation to receive a tax credit for each of its employees who had a disadvantaged employment history prior to being hired by the corporation.

On April 25, 1996, Fabrey-Centers of America, operating as Jo-Ann Stores, Inc. ("Jo-Ann Fabrics"), headquartered in Hudson, Ohio, contracted with F&S to have F&S administer the WOTC program on its behalf.  F&S's responsibilities included identifying potential employee candidates for the WOTC program, obtaining written state certifications verifying employees' eligibility for the WOTC program, and tabulating monthly WOTC figures.  Jo-Ann Fabrics agreed to pay F&S a fee of 15% of the WOTC tax credits taken by Jo-Ann Fabrics.  These commissions were paid by Jo-Ann Fabrics to F&S on a monthly basis.  The contract between F&S and Jo-Ann Fabrics began in April 1996 and continued until August 1999 when Jo-Ann Fabrics terminated the relationship.

As a result of fraudulent information provided by F&S, Jo-Ann Fabrics claimed WOTC tax credits in the amount of $858, 623.00 on its tax return for tax filing year 1997, fiscal year end 1998; and $1,581,545.00 on the return for tax filing year 1998, fiscal year end 1999.  An investigation initiated by a suspicious Jo-Ann Fabrics revealed the fraud, and Jo-Ann Fabrics eventually corrected those tax returns by filing amended returns with the IRS and reducing its claimed WOTC credits to about $100,858 and $175,000, respectively, for the two years in question.

Defendant was one of several F&S employees who was indicted for his involvement in the fraudulent tax credit scheme.  Defendant was charged in the United States District Court for the Northern District of Ohio with two counts of aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2).  Defendant pled not guilty and proceeded to a jury trial. Six F&S employees testified at Defendant's trial on behalf of the government, including Brian Eden,

owner of F&S, and Paul Friedlander, vice-president of F&S, both of whom had previously been indicted for the WOTC tax credit fraud, and who were already serving sentences for these crimes. Four other former F&S employees also testified, including Deborah Kiniry and Elizabeth Benavides, two telephone operators, and Jon Martin and Eugene Rosenfeld, information technology ("IT") specialists.

All of the employees testified about their involvement in the production of false WOTC statements and implicated themselves, each other, and Defendant in the scheme. Both Friedlander and Eden testified that Defendant was the vice-president of WOTC, responsible for overseeing the operators who determined which people were eligible for WOTC credits, processing the paperwork, and coordinating with the state. Friedlander also testified that Defendant was directly involved in cutting and pasting names and social security numbers on tax credit certification forms in order to make "the forms look real." (J.A. at 70.) According to Friedlander, Defendant also directed his subordinates to fraudulently prepare the credits.

The telephone operators also testified that Defendant participated in the fraud, and that Defendant, as supervisor of the telephone operators, directed the operators to do so as well. One operator, Kiniry, testified that Defendant would regularly instruct her to duplicate and forge an individual's signature on certification forms. Another operator, Benavides, also testified that Defendant asked her to forge signatures. IT specialist Martin testified that he observed Defendant asking operators to forge signatures on certification forms.

Defendant testified on his own behalf and denied any involvement in the false certification process, but Defendant was convicted of both counts on February 14, 2005, and was sentenced on

February 16, 2005, to thirty months imprisonment and one year of supervised release. Defendant filed his timely notice of appeal on February 22, 2005.

II.

Whether remarks by a prosecutor amount to prosecutorial misconduct and whether they render a trial fundamentally unfair are mixed questions of law and fact that are reviewed *de novo*. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). We review only for plain error, however, "[w]here, as here, a criminal defendant has failed to object below." *U.S. v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Id.* (quoting Fed. R. Crim. P. 52(b)). To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Kingsley*, 241 F.3d 828, 835-36 (6th Cir. 2001). The plain error doctrine mandates reversal in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994).

III.

Defendant claims that the government, during its closing statement, made numerous improper remarks which deprived him of a fair trial in violation of his due process rights. We believe, however, that even if some of the alleged remarks were arguably improper, they were not

4

flagrant and were unlikely to have affected Defendant's substantial rights when viewed in the context of overwhelming evidence of Defendant's guilt.

When reviewing claims of prosecutorial misconduct, we must first determine whether the statements were improper. *Carroll*, 26 F.3d at 1387; *see also United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). If they were improper, then we look to see if they were flagrant and warrant appeal. *Carroll*, 26 F.3d at 1389-90; *Francis*, 170 F.3d at 549.

> To determine flagrancy, the standard set by this Court is: 1) whether the statement tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.

*Francis*, 170 F.3d at 549-50 (citations omitted).

We can find no impropriety in most of the statements made by the government during the closing argument about which Defendant complains. In particular, it was not improper for the government to make statements regarding the likelihood that Eden, the owner of F&S who was already indicted and incarcerated, would receive a Rule 35 sentence reduction for testifying against Defendant. This Court has held with respect to plea agreements that "[t]he prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's uses of the agreement to attack the witness's credibility." *Francis*, 170 F.3d at 550 (citing *United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991)). "The potential for impropriety emerges, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to." *Id.*

In the present case, the government's attorney had asked Eden during direct examination whether or not Eden received any sentencing reduction for testifying, to which Eden replied "no." On cross examination, defense counsel sought to challenge this assertion by asking Eden whether it was his understanding that "even after all that, with no deals on the table, with no promises being made . . . that the government . . . after your testimony today, can still come before the judge that sentenced you and say, hey, judge, we think that Mr. Eden should get a reduction in sentence." (J.A. at 88.) In response to that question, Eden conceded that he would like to get out of prison. During its closing, the government attorney rebutted this testimony and sought to affirm Eden's credibility as a witness to the jury by stating,

> Do you think for a minute he's going to get up there now and lie and subject himself to a potential perjury charge? For what? Because he hopes to get a Rule 35? That's the sentence reduction. He hopes the government and his sentencing Judge will somehow find it in their hearts that he deserves to get a sentence reduction. He said himself, yeah, he wants it. Well, I want to win the lottery, but I don't think that's going to happen any more than anything else around here.

(J.A. at 148-49.) Although the government's remarks here may have been melodramatic, they were a permissible response to defense counsel's attempts to use the potential for a Rule 35 sentence reduction to attack Eden's credibility, and were not improper.

There was also no impropriety in the government's statement that Defendant was lying to the jury, assuming there was a reasonable evidentiary basis for the government to make such a statement. The government told the jury that Defendant was "the only person not admitting what he did is wrong. He continues to lie, just as he lied to the agents a couple years ago. Now he's lying to you." (J.A. at 147.) If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness. *Francis*, 170 F.3d at 551. "This court has held that a prosecutor may

6

assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony." *Id.* (citing *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994)). "To avoid improprieties, however, such comments must 'reflect reasonable inferences from the evidence adduced at trial.'" *Id.* (quoting *United States v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir. 1992)) (finding that because the defendant took the stand, it was not improper for the prosecutor to question his credibility, but it was improper for the prosecutor to utter personal sentiments in front of the jury with no explanation or indication of evidentiary bases). "Misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility." *Id.*

In the present case, Defendant testified on his own behalf; therefore the government was permitted to suggest to the jury that Defendant was lying so long as the government referred to evidentiary bases for this assertion. The record reveals that the government made these comments regarding Defendant's truthfulness in reference to extensive comments about witness testimony, in which all of the former F&S employees who testified admitted that they had been involved in the fraud, and also all testified that they had either witnessed Defendant engage in alleged illegal activity, or had been directed to engage in alleged illegal activity by Defendant. Based upon such testimony and because Defendant testified, the government's remarks arguably reflect reasonable inferences from evidence adduced at trial, and it was not improper for the government to suggest that Defendant was lying.

We do have some reservations, however, about some of the government's remarks to the jury, especially the government's comment that the decision had been made "to charge only the

three top people in that company, all of whom were intimately involved or intimately directed this massive fraud." (J.A. at 142.) This remark may have come too close to the line of suggesting that Defendant is guilty merely because he is being prosecuted, and may have constituted improper vouching in a testimonial way by the government attorney. We have previously found that the "transgressions of the prosecutor were egregious" where the prosecutor remarked, "[i]f the United States did not believe the defendant was guilty of committing these charges in the indictment . . . this case, of course, would never have been presented to you in the first place." *United States v. Bess*, 593 F.2d 749, 754-55 (6th Cir. 1979).

In the case before us, the government's statement about having charged only the three top people in the company may have been appropriate in order to present the jury with the government's explanation as to why all the employees who were implicated in the fraudulent activities were not also indicted. On the other hand, however, we believe that the government could have made its point without referencing the fact that Defendant and the other managers were specifically charged because they were "intimately involved in the fraud." Regardless of whether this statement was improper, however, we would still find, on plain error review, that the remark was not flagrant or repetitive and did not violate Defendant's substantial rights, in light of the overwhelming evidence of Defendant's guilt which was presented to the jury. *See Carroll*, 26 F.3d at 1383.

We are similarly troubled by the potential impropriety of the government's reference to the fact that there were tax frauds involving other clients, and the statement, "Imagine what might have happened with the other clients." (J.A. at 146.) Even though Eden testified hat he had been indicted in Pennsylvania for a fraud involving Rite Aid, there was no evidence presented at trial that

Defendant was involved in tax frauds involving Rite Aid or any other clients. The only allegations against Defendant in this trial were those involving Jo-Ann Fabrics, so it may have been somewhat improper for the government to make the comment. Again, however, on plain error review where Defendant failed to object below, we do not find that this remark was flagrant or that it affected Defendant's substantial rights.

## IV.

In conclusion, we find that the government's remarks during closing arguments did not constitute reversible error that affected Defendant's substantial rights, and we therefore **AFFIRM** Defendant's conviction.