# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JANUARY 22, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000298-MR

DATE 4|3|09 _Kelly Klaber_ D.C.

TERRANCE MILES                                                        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.        HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
NO. 05-CR-000740

COMMONWEALTH OF KENTUCKY                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

This is an appeal from a judgment convicting Appellant of murder, wanton endangerment, tampering with physical evidence, and being a persistent felony offender in the second degree (PFO II) stemming from the shooting death of a bouncer outside a Louisville nightclub. Appellant argues that he was denied a speedy trial, that there was misleading and false testimony presented to the grand jury, that defense counsel's cross-examination of a jailhouse witness was improperly limited, and that a number of unpreserved errors cumulatively amounted to palpable error. Upon review of the record, we adjudge that the claimed errors were either not error or did not rise the level of reversible or palpable error. Thus, we affirm.

On the night of February 27, 2005, Michael Teasley, a bouncer at Club 502, was shot and killed outside the club as he attempted to clear the parking

lot after the club had closed. Earlier that same evening, after another bouncer had removed Terrance Miles from the club for smoking marijuana, Miles and Teasley got into a fight. Teasley's wife, Crystal, who also worked at the club, testified that after the fight, Miles grinned and said to her husband, "you might have whipped my ass, but I'm going to get you."

Officer Frank Hill of the Louisville Metro Police Department, who was working extra security for the club while off duty, observed the fight between Teasley and Miles. While Hill did not witness the actual shooting, he heard the gunshots and then looked in the direction of the gunshots and saw a male running across the parking lot dressed in all dark clothing and wearing a toboggan hat. Officer Hill testified that the man he observed running across the parking lot was the same man who had been fighting with Teasley earlier in the night. Hill gave chase in his patrol car with the assistance of another bouncer and at one point located the suspect behind a dumpster in back of the club. However, Hill eventually lost sight of the suspect.

A number of items were collected from the crime scene, including a black toboggan hat and a cell phone. The number of the cell phone matched the number Miles gave to Enterprise Rent–a-Car when he switched his rental vehicle the day after the murder. The hat was ultimately sent by the Commonwealth to the Kentucky State Police forensic lab for DNA testing to see if trace evidence on the hat matched Miles' DNA. The results of the testing were ultimately determined to be negative for Miles' DNA.

On March 5, 2005, Miles was indicted for the murder of Teasley, as well as other charges related to the shooting. After a series of continuances related to the testing of the toboggan hat, a jury trial was held on December 12, 2006. The jury found Miles guilty of murder, first-degree wanton endangerment, tampering with physical evidence and PFO II, and recommended a sentence of fifty (50) years in prison. From the amended judgment of April 5, 2007, accepting the jury's recommendations, Miles now appeals as a matter of right.

## SPEEDY TRIAL

Miles alleges that the twenty-one (21) month time period between his indictment and trial violated his Sixth Amendment right to a speedy trial. During the twenty-one (21) month period, the Commonwealth requested and was granted three continuances. The stated reason for each motion for continuance was that they were awaiting the DNA test results on the black toboggan hat. The hat was sent to the lab for testing on November 7, 2005.

On November 25, 2005, Miles pro se asserted his right to speedy trial in a letter to the court, which was followed by a formal motion for speedy trial filed on December 13, 2005 by defense counsel. However, defense counsel stated no objection to the continuance at the December 5, 2005 hearing prior to the first proposed trial date, wherein the prosecutor maintained that the hat was a vital piece of evidence which could prove to be either inculpatory or exculpatory.

At a subsequent pre-trial hearing on March 3, 2006, the prosecution informed the court that when he called to check on the progress of the DNA

3

testing on the hat, he was told that the lab had not even started testing the hat. During this hearing, Miles' counsel agreed that the toboggan hat was a "crucial piece of evidence" in the case. At the April 11 and September 26, 2006 hearings, however, Miles' counsel objected to the unnecessary delay in the case and announced ready for trial even though testing was not complete on the hat.

A defendant's right to a speedy trial under both the United States and Kentucky Constitution is analyzed under the four-prong balancing test set forth in Barker v. Wingo, 407 U.S. 514 (1972). Dunaway v. Commonwealth, 60 S.W.3d 563, 569 (Ky. 2001). The four factors to be considered are: 1) length of the delay; 2) reason for the delay; 3) defendant's assertion of his right to a speedy trial; and 4) prejudice to the defendant. Barker, 407 U.S. at 530.

Regarding the first factor, we deem the twenty-one (21) month delay in this case to be presumptively prejudicial. See Bratcher v. Commonwealth, 151 S.W.3d 332, 344 (Ky. 2004) (holding an eighteen (18) month delay in a murder case to be presumptively prejudicial). "That prejudice, however, is not alone dispositive and must be balanced against the other factors." Parker v. Commonwealth, 241 S.W.3d 805, 812 (Ky. 2007) (citation omitted).

As for reason for the delay, the Commonwealth argued that the toboggan hat was vital evidence in the case and that they could not go forward with the trial without the DNA testing being completed. Nevertheless, after the testing came back negative, the Commonwealth still proceeded with the trial and obtained a conviction against Miles. In fact, at trial the prosecutor elicited

testimony from the lead investigator on the case, Detective Chris Ashby, that the hat had no relevance in the case and argued such in his closing argument. Miles asserts that this demonstrates that the testing on the hat was not a legitimate reason for the delay in this case and that the prosecutor intentionally misled the court as to the importance of the hat to the case.

The black toboggan hat in question was found and collected by the police as potential evidence at the scene. Officer Hill and two other witnesses testified at trial that the man who shot Teasley was wearing a toboggan hat. Simply because the testing came back negative on the hat and the prosecution subsequently argued at trial that the hat was not significant to the case, does not mean that the Commonwealth acted in bad faith in seeking DNA testing on the hat. After the hat tested negative for Miles' DNA, the Commonwealth had no choice but to minimize the evidentiary value of the hat at trial. In reviewing the record, there is no indication that the Commonwealth acted in bad faith. At the pre-trial hearings wherein the status of the testing on the hat was discussed, the prosecutor reported that he was regularly calling the lab to inquire about the status of the testing. Defense counsel admitted that the hat was crucial evidence and stated no objection to having the hat tested, although he sought to have their own expert present for testing.

Miles did assert his right to a speedy trial, both pro se and through counsel. However, as noted above, defense counsel did not initially object to the motions for continuance based on the testing of the hat not being completed.

As for prejudice to Miles as a result of the delay, Miles alleges that he lost a key witness for trial, Steven Edwards, who died on June 25, 2006 in a motorcycle accident. Upon review of the record, the only references to Edwards were in a March 2007 motion to dismiss indictment for speedy trial violation and as an alias for Miles. According to the record, no subpoenas were issued for Edwards' appearance at either of the two trial dates prior to Edwards' death. Further, Miles does not allege what Edwards' testimony would have been and why he was so crucial to his case.

Finally, although Miles was convicted, the negative test results on the hat were favorable to Miles' case at trial. The negative DNA results on the hat were a large part of Miles' defense and were repeatedly referred to by defense counsel at trial as proof that Miles was not the shooter.

Upon consideration of all of the above factors in Barker, we adjudge that Miles was not denied his right to a speedy trial in this case.

With respect to Miles' claim that his right to a speedy trial under KRS 500.110 was violated, it has been held that said statute only applies when a defendant is incarcerated for one offense and a detainer has been lodged against him for another offense. Gabow v. Commonwealth, 34 S.W.3d 63 (Ky. 2000) overruled in part on other grounds by Crawford v. Washington, 541 U.S. 36, 60-61 (2004). From our review of the record, no detainer was lodged against Miles in this case. Hence, KRS 500.110 is not implicated here.

6

## GRAND JURY TESTIMONY

Miles argues that the Commonwealth's witness Sergeant Teddy Laun presented false and misleading testimony to the grand jury when he testified that Officer Hill and Reggie Burney had witnessed the shooting of Teasley. The grand jury testimony is not in the record before us. However, in Miles' motion to dismiss the indictment for misleading the grand jury, Miles refers to the following testimony of Sergeant Laun before the grand jury: "We prepared a photo pack which was shown to two of the witnesses, um, they were at the scene of the altercation and at the scene of the shooting." At trial, Officer Hill's testimony was that, while he did not see the actual shooting, he was nearby and saw the defendant running from the scene. Burney did not testify at trial. We do not see that said Hill's testimony and the evidence adduced at trial was in conflict with the purported grand jury testimony of Sergeant Laun. The grand jury testimony was that Hill and Burney were <u>at the scene</u> of the altercation and shooting and were able to identify the defendant, not that they actually saw the shooting. Accordingly, this argument is without merit.

## CROSS-EXAMINATION OF BRYCE BONNER

Prior to trial, the Commonwealth made a motion in limine to limit the cross-examination of its jailhouse witness, Bryce Bonner, regarding the nature of his conviction and whether he sought a deal from the prosecutor in exchange for his testimony in this case. The Commonwealth argued that because Bonner had already been convicted and sentenced as of the time of Miles' trial and did not receive a deal or in any way benefit from testifying for

the Commonwealth, any potential bias would have been eliminated. The Commonwealth maintained, therefore, that the defense should not be able to inquire into whether Bonner sought a deal in exchange for his testimony. Defense counsel argued that Bonner's initial motive in approaching the Commonwealth and seeking a deal in exchange for his testimony was relevant and could be inquired into by the defense. The court granted the Commonwealth's motion and ruled that the defense could not ask Bonner if he had initially sought a deal from the Commonwealth in exchange for his testimony. Miles argues that his Sixth Amendment right to cross-examine witnesses was violated when the trial court would not allow this evidence of Bonner's bias to be admitted.

> An essential aspect of the Sixth Amendment Confrontation Clause is the right to cross-examine witnesses. Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). Additionally, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974). However, it is equally well established that the right to cross-examination is not absolute and the trial court retains the discretion to set limitations on the scope and subject: "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986) (emphasis in original). . . . In defining reasonable limitations on cross-examination, this Court has cautioned: "a connection must be established between the cross-examination

8

> proposed to be undertaken and the facts in evidence." Commonwealth v. Maddox, 955 S.W.2d 718, 721 (Ky. 1997).

Davenport v. Commonwealth, 177 S.W.3d 763, 767-68 (Ky. 2005).

As for limitations on cross-examination on a witness' bias, "this Court has explained: 'So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries.'" Id. at 768 (quoting Commonwealth v. Maddox, 955 S.W.2d at 721). The test espoused by the Van Arsdall Court was whether a "reasonable jury might have received a *significantly* different impression of [the witness'] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." 475 U.S. at 680.

A trial court's rulings concerning limits on cross-examination are reviewed for abuse of discretion. Nunn v. Commonwealth, 896 S.W.2d 911, 914 (Ky.1995). In Davenport, we adjudged that the trial court did not abuse its discretion in prohibiting the defense from cross-examining the witness about his probation status or his pending misdemeanor charges where the Commonwealth had made no offer of leniency in exchange for the witness' testimony. 177 S.W.3d at 771. Likewise, in the instant case, Bonner had not been offered a deal for his testimony and had already been convicted and sentenced as of Miles' trial. He admitted to being a convicted felon at trial. Thus, at the time of Miles' trial, Bonner had nothing to gain in testifying against Miles, which presumably explains why he ended up being a hostile witness for the Commonwealth and his testimony was not helpful to the

9

Commonwealth. Apparently Bonner recanted at trial, denying that he previously stated to the prosecutor that Miles' demeanor was arrogant when Miles told Bonner that he could not be convicted. Bonner testified only that Miles told him the Commonwealth did not have the evidence to convict him and that he was angry because he was being accused of crimes he did not commit.

From our review of Bonner's testimony, we do not see that the jury would have received a significantly different impression of Bonner had they heard evidence that he sought a deal with the Commonwealth in exchange for testimony against Miles. The jury knew that Bonner was a convicted felon and was in jail at the time he had the conversation at issue with Miles. And even if there was error, the defense was not prejudiced by Bonner's testimony. Thus, it would have been harmless error. RCr 9.24.

## CUMULATIVE EFFECT OF UNPRESERVED ERRORS

Miles argues that the aggregate of several other errors, which were admittedly unpreserved, constituted palpable error under RCr 10.26. A reviewing court may grant relief of an unpreserved error only when manifest injustice has resulted from the error. RCr 10.26. "To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisdictionally intolerable." Martin v. Commonwealth, 207 S.W.3d 1, 4 (Ky. 2006). Upon review of the entire record, we cannot say that the alleged errors below, either alone or cumulatively, rise to the level of palpable error.

10

Miles first assigns as error the improper questioning of Bonner by the prosecutor on direct when he asked him if he remembered the conversation he had with him the previous day, thereby placing the prosecutor's credibility before the jury. As discussed earlier, the testimony of Bonner was not harmful to Miles' case. If anything, it was helpful to the defense. Accordingly, the error, if any, could not constitute palpable error.

Miles next alleges prosecutorial misconduct when the Commonwealth made comments during its closing argument that the defendant and defense witnesses were lying. Responding to the accusation in the defense closing argument that the Commonwealth's witness, Crystal Teasley was lying, the prosecutor argued that Miles and his two witnesses were lying. In so doing, the prosecution pointed to the inconsistencies between the defense testimony and defense theory of the case and the established facts in the case. However, Miles did not testify in the case. According to the Sixth Circuit:

> If a defendant testifies as here, a prosecutor may attack his credibility to the same extent as any other witness. See Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), see also Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900). This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony. See United States v. Veal, 23 F.3d 985, 989 (6th Cir.1994). To avoid impropriety, however, such comments must "reflect reasonable inferences from the evidence adduced at trial." See id. (quoting United States v. Goodapple, 958 F.2d 1402, 1409-10 (7th Cir.1992)). Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility. Taylor, 985 F.2d at 846

11

(citing <u>United States v. Causey</u>, 834 F.2d 1277, 1283 (6th Cir.1987), <u>cert.</u> <u>denied</u>, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988)).

<u>United States v. Francis</u>, 170 F.3d 546, 551 (6th Cir. 1999).

As for the prosecution's assertion in closing argument that the defense witnesses were lying, because the prosecution backed up such claims with specific discrepancies between their testimony and the evidence, there was no prosecutorial misconduct. As to the prosecution's argument that the defendant was lying, because Miles was not a witness in the case, the comment amounted to prosecutorial misconduct. Nevertheless, we adjudge that in this case such misconduct was neither flagrant nor of such an egregious nature to deny Miles his constitutional right to due process of law, especially given the absence of a contemporaneous objection to the comment. <u>See</u> <u>Barnes v. Commonwealth</u>, 91 S.W.3d 564, 568 (Ky. 2002) (following the Sixth Circuit Court of Appeals in <u>United States v. Carroll</u>, 26 F.3d 1380, 1390 (6th Cir. 1994) and <u>United States v. Bess</u>, 593 F.2d 749, 757 (6th Cir. 1979)) and <u>Slaughter v. Commonwealth</u>, 744 S.W.2d 407, 411-412 (Ky. 1987). In light of the overwhelming evidence adduced against Miles in this case, we likewise cannot say that manifest injustice resulted from said error. Hence, there was no palpable error.

Miles also assigns as palpable error the prosecution's leading of its witnesses, Detective Ashby and Bryce Bonner, in violation of KRE 611. As noted above, Bryce Bonner turned out to be a hostile witness for the Commonwealth. Leading questions of a hostile witness are expressly permitted

12

by KRE 611(c). And the question asked of Detective Ashby regarding the testing of the toboggan hat, if leading at all, would not amount to palpable error.

The last three alleged palpable errors are summarily raised in Appellant's brief without any citation to the record, citation to authority, and without any explanation as to why they constitute error. See CR 76.12(4)(c)(v). Those arguments were not properly presented to this Court and thus will not be addressed.

For the reasons stated above, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Aubrey Williams
Williams & Associates
421 Starks Building
455 Fourth Avenue
Louisville, KY 40202


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Henry Albert Flores, Jr.
Assistant Attorney General
1024 Capital Center Drive
Frankfort, KY 40601